UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ERIN B. DILLINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-293-DCP |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 19].  Now before the Court are

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22].  Erin

B. Dillinger ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge

("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner").  For the

reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's

motion.

## I.    PROCEDURAL HISTORY

Plaintiff previously filed an application for disability insurance benefits on October 11,

2011, as well as an application for supplemental security income on November 15, 2011.  [Tr. 12].

In both applications, Plaintiff alleged disability beginning on June 1, 2009.  [*Id.*].  On April 17,

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case.  Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

2013, ALJ Mary C. Montanus issued a partially favorable decision, finding that Plaintiff was not disabled from June 1, 2009 through July 31, 2011. [*Id.*]; *see* [Tr. 77–99]. However, ALJ Montanus found that Plaintiff became disabled on August 1, 2011, but that medical improvement occurred on December 28, 2012, and Plaintiff was no longer disabled as of that date. [*Id.*]. Plaintiff did not appeal this finding of partial disability.

On January 28, 2014, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability beginning on June 1, 2009. [Tr. 12, 203–11]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 155]. A hearing was held on February 8, 2017. [Tr. 37–77]. On August 29, 2017, ALJ Joan A. Lawrence found that Plaintiff was not disabled. [Tr. 12–23]. ALJ Lawrence applied res judicata and found that the previous ALJ's decision was final as to the period between June 1, 2009 and December 27, 2012, and "addresse[d] December 28, 2012 through the claimant's date last insured." [Tr. 12]. The Appeals Council denied Plaintiff's request for review on April 6, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on July 13, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 2016.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 28, 2012 through her date last insured of June 30, 2016 (20 CFR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: psoriatic arthritis, osteoarthritis in hips and right knee, asthma, degenerative disc disease, diabetes, peripheral neuropathy, depression (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally balance, stoop, kneel, crouch, and climb stairs; must avoid extreme temperatures, humidity, vibration, and hazards; avoid dust, fumes, smoke, and other pulmonary irritants; no crawling, climbing, ladders, or overhead work; can do simple work; and can deal with change one-third of the workday.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on April 21, 1979 and was 37 years old, which is defined as a younger individual age 18-40, on the date last insured (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national

economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 28, 2012 through June 30, 2016, the date last insured (20 CFR 404.1520(g)).

[Tr. 15–22].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of

credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.  DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that

> accommodates his residual functional capacity ("RFC") and
> vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence, as she contends that RFC is not supported by the treatment records reviewed in the disability decision or the opinions of the nonexamining state agency consultants. [Doc. 17 at 8–12]. Additionally, Plaintiff contends that the ALJ failed to properly analyze whether her physical impairments met Listing 14.09. [*Id.* at 12–15]. The Court will address Plaintiff's specific allegations of error in turn.

### A. ALJ's RFC Determination

Plaintiff challenges the ALJ's failure to include any manipulation, handling, or fingering limitations, or any limitations relating to her being off-task during the workday, in the RFC determination. Plaintiff asserts that "the ALJ opted not to rely upon the medical opinions contained

in the record, and opted to utilize mischaracterized portions of Plaintiff's treatment notes in determining an RFC that was not consistent with the record as a whole."  [*Id.* at 11].

The Commissioner responds that the ALJ's decision not to include limitations in handling and fingering, or difficulties in focus and concentration, is supported by substantial evidence and that Plaintiff's reported activities were inconsistent with any significant manipulative limitations. [Doc. 22 at 18–19].  Further, the Commissioner asserts that the ALJ appropriately stated why she assigned little weight to the opinions of the nonexamining state agency consultants [*Id.* at 20], as well as that Plaintiff has failed to show any "harm from the exclusion of the state agency physician's manipulative limitations from the ALJ's RFC finding."  [*Id.*].  Lastly, the Commissioner maintains that the ALJ also properly found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record.  [*Id.*].

A claimant's RFC is the most that claimant can do despite his or her impairments.  20 C.F.R. § 404.1545(a)(1).  In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record.  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013).  "[W]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his or her own lay medical opinion for that of a treating or examining doctor."  *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (internal quotation marks and brackets omitted).

7

In the disability decision, the ALJ found that Plaintiff had the RFC to perform a modified range of light work, except for finding the relevant limitations that she could occasionally balance, stoop, kneel, crouch, and climb stairs; no crawling, climbing ladders, or overhead work; could do simple work; and could deal with change for one-third of the workday. [Tr. 18].

Plaintiff first challenges the ALJ's failure to include fingering or handling limitations in the RFC determination. Plaintiff claims that the ALJ improperly based this finding on the treatment records of her treating rheumatologist, Jay Warrick, M.D., as "the ALJ . . . completely mischaracterized the totality of the treatment notes in the record." [Doc. 17 at 9]. Additionally, Plaintiff alleges that the failure to account for handling or fingering limitations in the RFC is in conflict with the opinions of the nonexamining state agency physicians, who found that Plaintiff was capable of no more than sedentary work, with a limitation to frequent handling and fingering.

In the disability decision, the ALJ found that Plaintiff was limited from overhead work, but did not include any additional limitations related to Plaintiff's use of her hands. [Tr. 18]. The ALJ first reviewed Plaintiff's psoriatic arthritis and degenerative disc disease when finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of the[ ] [claimed] symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 19]. The ALJ noted that Plaintiff had normal range of motion in her cervical and lumbar spine, as well as normal strength in her upper and lower extremities during an April 29, 2013 examination in West Palm Beach, Florida. [Tr. 19 (citing Tr. 427–41)]. In particular, Plaintiff's motor strength testing was found to be 5/5 bilaterally including her trapezius, deltoid, triceps, and biceps, and her hand grasping was 5/5 bilaterally. [Tr. 428].

Further, the ALJ detailed that Dr. Warrick examined Plaintiff on November 20, 2013, and noted that Plaintiff had mild skin disease and minimal swelling. [Tr. 19 (citing Tr. 521–28)]. The

ALJ discussed a January 19, 2015 treatment note, in which Dr. Warrick stated that Plaintiff did not have significant swelling or deformity in her hands. [Tr. 19]; *see* [Tr. 581–82]. Next, the ALJ reviewed that Plaintiff stated that she restarted Enbrel for treatment of her arthritis on April 8, 2015 and reported "that she felt better." [*Id.*]; *see* [Tr. 583]. The ALJ detailed that Plaintiff stated on April 7, 2016 that her psoriatic arthritis was "generally well controlled with Enbrel." [Tr. 19 (citing Tr. 570–94)]; *see* [Tr. 591]. Additionally, the ALJ noted that while Plaintiff testified that she had frequent infections due to her medications, Dr. Warrick's treatment notes on April 7, 2016 stated "she did not get frequent infections [with Enbrel]." [Tr. 19 (citing Tr. 591)]. Dr. Warrick noted that "[w]hile on the Enbrel, she is generally well controlled." [Tr. 591].

The ALJ then reviewed the medical record with respect to Plaintiff's back pain and degenerative disc disease. [Tr. 20]. First, the ALJ detailed that a June 13, 2016 MRI "showed a disc protrusion at L5-S1 that encroached the L5 nerve root but did not impinge on the nerve root." [*Id.* (citing (Tr. 606)]. The ALJ discussed that Plaintiff reported excellent pain relief from her trial spinal cord stimulator in November of 2015. [*Id.*]. Following the permanent placement of her spinal cord stimulator on November 23, 2015 [Tr. 640, 975–76], the ALJ detailed that Plaintiff reported that she was doing well and that she had moderate pain reduction with pain medications in January of 2016. [Tr. 20]; *see* [Tr. 637]. Additionally, the ALJ cited to progress notes from Plaintiff's treatment with Comprehensive Pain Specialists on March 17 and April 12, 2016 where Plaintiff "continued to report moderate reduction in pain with pain medications." [Tr. 20 (citing Tr. 611, 618)].[2] Therefore, the ALJ found that Plaintiff's "impairments are not as severe as she has alleged." [*Id.*].

---

[2] On March 17, 2016, Plaintiff reported that her lumbar pain was moderately controlled on her current medication regimen, and denied side effects, stating that she was doing well on that

Next, the ALJ stated that she assigned little weight to the opinions of the nonexamining state agency physicians, largely "[b]ecause these physicians did not see any medical evidence after 2014." [Tr. 21]. Dr. Rita Misra examined the evidence of record at the initial level of the agency's review on July 6, 2014 and opined the same RFC finding from Plaintiff's previous claim—that Plaintiff could occasionally and frequently lift and carry up to ten pounds, stand and/or walk for a total of two hours, and sit for a total of six hours in an eight-hour workday. [Tr. 116]. Additionally, Dr. Misra opined that Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but that she could never climb ladders, ropes, or scaffolds. [Tr. 116–17]. Lastly, Dr. Misra found that Plaintiff was limited in her ability to reach left and right in front and/or laterally, as well as in her ability to handle (gross manipulation) and finger (fine manipulation). [Tr. 117]. Therefore, Dr. Misra opined that Plaintiff was limited to no overhead manipulation, and frequent manipulation otherwise. [*Id.*]. Dr. Thomas Thrush examined the evidence of record at the reconsideration level of the agency's review on December 28, 2014, and opined an identical RFC and manipulative limitations. [Tr. 134–35].

In the disability decision, the ALJ noted that "these physicians did not have access to the complete medical record." [Tr. 20]. For example, the ALJ detailed that they did not review the January 19, 2015 treatment note in which Dr. Warrick stated that Plaintiff did not have significant swelling of deformity. [Tr. 581–82]. Additionally, the ALJ noted that the nonexamining state agency physicians did not have access to Dr. Warrick's treatment notes after Plaintiff restarted

---

day and had no new complaints or concerns since her last office visit. [Tr. 625]. The ALJ mistakenly cites to a May 16, 2016 treatment note which similarly notes that Plaintiff states that "[s]he is doing well today with no new complaints or concerns since her last office visit," and her chronic low back, knee, and shoulder pain "is reduced with her current medication regimen by up to 25%." [Tr. 611].

Enbrel, including that on April 8, 2015 where she stated "that she felt better" [Tr. 583], and that on April 7, 2016, where Dr. Warrick noted that while on Enbrel, Plaintiff was "generally well controlled" [Tr. 591]. The ALJ also discussed that the nonexamining state agency consultants did not review Plaintiff's excellent pain relief from her trial spinal cord simulator, as well as that Plaintiff reported that she was doing well and that she had moderate pain reduction with pain medication in January 2016. [Tr. 637]. Lastly, as the Court has already detailed, the ALJ cited to March 17 and April 12, 2016 treatment notes where Plaintiff continued to report moderate reduction in her overall pain with pain medications. [Tr. 611, 618].

Plaintiff asserts that "[w]hile there are notes of minimal improvement of symptoms with the use of medication, the record does not reflect a Plaintiff who was pain-free or thriving post-spinal cord stimulator, as suggested in the ALJ's decision." [Doc. 17 at 9]. In particular, Plaintiff points to treatment notes detailing, "on multiple occasions, post stimulator implant, that she experienced '0-25%' improvement with the treatment plan." [*Id.* (citing Tr. 604, 611, 613, 620, 627, 644)]. However, the Commissioner claims that Plaintiff's treatment records with Comprehensive Pain Specialists establish that Plaintiff stated that her pain was mildly to moderately reduced with her current medication. [Doc. 22 at 12 (citing Tr. 604, 618, 1002, 1009, 1015)]. Plaintiff also cites to an October 13, 2016 treatment note with Dr. Warrick that stated that "Enbrel is helpful, but she has had more prominent joint pain, stiffness, and swelling mainly in the small joints of the hands, right knee, ankles and right shoulder." [Tr. 965].

Ultimately, the ALJ was not required to adopt the opinions of the nonexamining state agency consultants and appropriately detailed her reasoning for affording little weight to their opinions. The ALJ explained why she rejected the opinions of Dr. Misra and Dr. Thrush, and identified specific treatment notes in the record which the nonexamining state agency physicians

11

did not review.  In the disability decision, the ALJ discussed how the nonexamining state agency physicians failed to review Plaintiff's moderate pain reduction through her use of pain medication, Enbrel, to treat her psoriatic arthritis and a permanent spinal cord stimulator.

Social Security Ruling 96-8p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996).  However, the ALJ was not required to prove "good reasons" for rejecting the opinions of non-treating medical sources. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (noting "a claimant is entitled under the SSA only to reasons explaining the weight assigned to his treating sources"); *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (holding that "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight'").

While the ALJ did not directly address her rationale for failing to include the handling and fingering limitations in the Dr. Misra and Dr. Thrush's opinions, as the Court has already detailed, the ALJ detailed specific treatment notes that were in conflict with the opinion.  *See Stringer v. Colvin*, No. 3:14-1255, 2015 WL 5037064, at *8 (M.D. Tenn. Aug. 24, 2015) (holding the ALJ provided satisfactory explanation for weight afforded to opinion of non-treating physician, even though he did not specifically explain why he chose not to adopt each and every limitation offered), *report and recommendation adopted sub nom.*, *Stringer v. Soc. Sec. Admin.*, 2015 WL 5444802 (M.D. Tenn. Sept. 15, 2015).  Further, the ALJ found that the opinions were entitled to little weight, as the nonexamining state agency physicians did not review any medical records after 2014.  *See Moscorelli v. Colvin*, No. 1:15-CV-1509, 2016 WL 4486851, at *3–4 (N.D. Ohio Aug. 26, 2016) ("However, the ALJ was only tasked with offering an explanation, and the Court finds that the ALJ offered a satisfactory explanation for the weight afforded to the opinions of the state agency

psychologists and the reasons why some but not all of the limitations offered by these sources were incorporated into the RFC."); *see, e.g.*, *Watson v. Comm'r of Soc. Sec.*, No. 1:16-CV-432-SKL, 2018 WL 1460866, at *12–13 (E.D. Tenn. Mar. 23, 2018) ("The ALJ has provided a reasoned explanation why Plaintiff's RFC is less restrictive than found by every medical source of record. The ALJ is allowed to depart from the medical opinions in assessing Plaintiff's RFC so long as he does not draw conclusions without citing to substantial evidence in support.").

Additionally, the Commissioner correctly states that any error by the ALJ to include the frequent handling and fingering limitations in Dr. Misra and Dr. Thrush's opinions was harmless. The nonexamining state agency consultants limited Plaintiff to frequent handling and fingering, as opposed to constant handling and fingering, and at the disability hearing, the vocational expert's ("VE") testimony incorporated such limitation in a hypothetical posed by the ALJ. Specifically, the VE opined that an individual, who could do frequent but not constant, handling and fingering on both hands up to two thirds of the day, would still be able to perform the jobs of ticket seller, storage rental clerk, and toll collector—the same jobs that the ALJ found that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform. [Tr. 70].

"Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted by*, 2017 WL 3172717 (S.D. Ohio July 25, 2017). An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined [the] RFC based on objective medical

evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (internal citations omitted).

Lastly, Plaintiff asserts that the ALJ erred by failing to include any additional limitations on her ability to remain on task, "despite the fact that Plaintiff is on a variety of medications that are known to affect one's ability to concentrate." [Doc. 17 at 11]. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). The Commissioner also correctly states that Plaintiff fails to cite to any support within the medical record, and cites to numerous treatment records from December of 2012 to July of 2016 wherein Plaintiff denied any significant side effects of her medication. *See* [Doc. 22 at 21]; *see, e.g.*, *Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) ("Although Hopkins complained of drowsiness, nausea, and blurred vision, these conditions were not documented in the record.").

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ,

14

the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

Ultimately, it is well-established that when evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion. *See, e.g.*, *Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401–02 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence")). "Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).

Accordingly, the ALJ's finding that Plaintiff could perform a modified range of light work was within her "zone of choice," despite affording little weight to the opinions of the nonexamining state agency consultants. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Therefore, the ALJ's decision not to include any handling or fingering limitations, or any

limitations on Plaintiff's ability to remain on track, in the RFC determination is supported by substantial evidence.

## B.     ALJ's Step Three Analysis

Plaintiff asserts that the ALJ failed to properly analyze whether her physical impairments met Listing 14.09.  [Doc. 17 at 12–14].  The Commissioner responds that the ALJ properly considered Listing 14.09 and substantial evidence supports the ALJ's conclusion that she did not meet the Listing.  [Doc. 22 at 15–18].

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001).  The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  A claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the claimant has the burden to prove that all of the elements are satisfied.  *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529.  Only when an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing level severity.  20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with comparing the medical evidence of record with a Listing's requirements.  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011).  However, the Sixth Circuit rejected "a heighted articulation standard" with regard to the ALJ's step three finding.  *Bledsoe v. Barnhart*, 165 F.

App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical evidence "almost establishes a disability"). Plaintiff has the burden of proving that her impairments could meet or medically equal the criteria of Listing 14.09 by pointing to specific medical findings that satisfy all of the criteria of the listing. *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016); *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5 (E.D. Tenn. Jan. 23, 2014) (citations omitted).

At the time of the ALJ's decision, Listing 14.09A required inflammatory arthritis, as described in § 14.00D6, with:

A. Persistent inflammation or persistent deformity of:

> 1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or
>
> 2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09.

Section 1.00 defines the term *inability to perform fine and gross movements effectively* as:

> Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living.

Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2).

Plaintiff asserts that she met the applicable requirements under Listing 14.09A(2). First, Plaintiff claims that Dr. Warrick's treatment records establish swelling in her hands during examination, which has resulted in her being unable to perform handling and fingering effectively. [Doc. 17 at 13 (citing Tr. 521–28, 585, 593, 966)]. Additionally, Plaintiff alleges that she testified that common tasks, such as completing paperwork for her children, are troublesome due to the pain and swelling in her hands. [*Id.* (citing Tr. 56)]. Lastly, Plaintiff notes that Dr. Misra and Dr. Thrush limited her to frequent handling and fingering. [*Id.* (citing Tr. 106–21, 125–39)].

In the disability decision, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment. [Tr. 17]. Specifically, the ALJ noted that she considered Listing 14.09, but that "there is no evidence that the claimant has had repeated manifestations of inflammatory arthritis, persistent inflammation, persistent deformity, or ankylosing spondylitis." [*Id.*].

Although the ALJ did not specifically examine the requirements of Listing 14.09 in detail, "[t]he Sixth Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 13-cv-180, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted by*, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014)); In *Forrest*, the Sixth Circuit

upheld the ALJ's conclusory finding at step three for two reasons: (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three; and (2) even if the ALJ's factual findings failed to support his step three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments. 591 F. App'x at 366.

Elsewhere in the disability decision, as the Court has already reviewed, the ALJ noted that Plaintiff had normal range of motion in her cervical and lumber spine, as well as normal strength in her upper and lower extremities during an April 29, 2013 examination. [Tr. 19 (citing Tr. 427–41)]. Dr. Warrick noted minimal synovitis, or swelling, during a November 20, 2013 examination. [*Id.* (citing Tr. 521–28)]. Additionally, the ALJ cited to a January 19, 2015 treatment note in which Dr. Warrick stated that Plaintiff did not have significant swelling or deformity. [Tr. 19]; *see* [Tr. 581–82]. Although Dr. Warrick noted persistent inflammation in Plaintiff's middle and index fingers, the ALJ noted that Plaintiff also stated that her psoriatic arthritis was generally controlled with Enbrel. [Tr. 20]; *see* [Tr. 591–95, 596–97]. Ultimately, the ALJ found that the "residual functional capacity assessment is supported by Dr. Warrick's treatment notes that stated that the claimant had minimal swelling and no deformities along with the claimant's statements that Enbrel generally controlled her psoriatic arthritis." [Tr. 21].

Therefore, the Court finds that the ALJ's later discussion of Plaintiff's treatment records with Dr. Warrick provides substantial evidence to support her step three finding that Plaintiff did not have "persistent inflammation" required to meet the applicable requirements of Listing 14.09. *See, e.g.*, *Nokes v. Astrue*, No. 2:09-CV-00070, 2011 WL 2632541, at *9 (M.D. Tenn. July 5, 2011) (finding substantial evidence supported finding that the plaintiff did not meet Listing 14.09, "[a]s the ALJ noted, upon examination, Dr. Fisher observed that Plaintiff had no synovitis and no

neurological deficits, and that she had a normal gait and normal range of motion with no joint effusion or erythema in her hips, knees, ankles, feet, lumbar spine, shoulders, elbows, wrists, and hands"), *report and recommendation adopted by*, 2011 WL 3111370 (M.D. Tenn. July 26, 2011); *Driver v. Astrue*, No. 2:08-0001, 2010 WL 6826618, at *14 (M.D. Tenn. Dec. 29, 2010) ("The record evidence and the plaintiff's testimony do not indicate that she suffers from persistent inflammation or a persistent deformity that causes her to ambulate ineffectively or to be unable to perform fine and gross movements effectively. The record medical evidence shows that the plaintiff had minimal swelling and no deformities in her joints.") (internal citation omitted), *report and recommendation adopted by*, 2011 WL 2600882 (M.D. Tenn. June 30, 2011).

With regard to the "inability to perform fine and gross movements effectively" under Listing 14.09, Plaintiff claims that she testified that she was unable to complete paperwork, as well as that the nonexamining state agency physicians opined that Plaintiff should be limited to frequent handling and fingering. [Doc. 17 at 13]. However, the ALJ found that Plaintiff's statements regarding the limiting effects of her symptoms were not as severe as alleged after reviewing the medical record with respect to her psoriatic arthritis. [Tr. 19]. Additionally, the nonexamining state agency physicians each considered Listing 14.09 and found that Plaintiff did not meet the requirements of any applicable Listing. [Tr. 115, 132].

Accordingly, the Court finds that the ALJ's step three determination that Plaintiff did not meet the requirements of Listing 14.09 is supported by substantial evidence, as the ALJ's subsequent discussion of the treatment records provided support for his finding that Plaintiff did not have repeated manifestations of inflammatory arthritis.

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge